UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────

MARK DUBLINO,

                              Plaintiff,

                                                    9:19-CV-0381
              v.                                    (GLS/DJS)

TIMOTHY McCARTHY et al.,

                              Defendants.

────────────────────────────────

APPEARANCES:

MARK DUBLINO
18-B-0793
Plaintiff, pro se
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021


GARY L. SHARPE
Senior United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

         The Clerk has sent to the Court for review a pro se civil rights complaint filed by

plaintiff Mark Dublino pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an

application to proceed in forma pauperis (IFP) and motion for a preliminary injunction.  Dkt.

No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"); Dkt. No. 3 ("Preliminary Injunction Motion").[1]

─────────────────────

[1] Following plaintiff's submission of his complaint and IFP Application, the action was administratively
closed based on plaintiff's failure to submit the Inmate Authorization Form required in this District.  Dkt. No. 5.
Plaintiff then properly filed the Inmate Authorization Form required in this District, and this action was re-opened.
Dkt. Nos. 9, 10.

Plaintiff is incarcerated at Auburn Correctional Facility and has not paid the filing fee for this action.

## II.    IFP APPLICATION

Upon review, the Court finds that plaintiff has submitted a completed and signed IFP Application, (Dkt. No. 2), which demonstrates economic need.  *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District.  Dkt. No. 9. Accordingly, plaintiff's IFP Application is granted.

## III.   SUFFICIENCY OF THE COMPLAINT

### A.    Governing Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[2]  Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis.  *See id*.

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim

---

[2]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

2

upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted).

## B.    Overview of Plaintiff's Complaint and Supplemental Submissions

Plaintiff's complaint is comprised of a cover page and attachment that identifies the defendants in this action. *See generally* Compl. The complaint does not contain a statement of claims or a request for relief. *Id*. However, attached as an exhibit to plaintiff's Preliminary Injunction Motion is a typed set of "claims," with supporting documentary evidence. *See* Dkt. No. 3-4 ("Claims and Supporting Documents"). These "claims" include factual allegations of wrongdoing against the individuals named in the complaint as defendants, as well as requests for relief. *Id*. The Court therefore construes the "claims" to be part of the complaint.

In addition, less than four weeks after plaintiff signed his complaint, he submitted a two-page "affidavit" with the following notation at the top of each page: "Attach to Claim #6." Dkt. No. 11 ("Supplement to Complaint").[3]

Supplemental pleadings are governed by Rule 15(d) of the Federal Rules of Civil Procedure, which permits the Court, "on motion," to allow the filing of a supplemental

---

[3]  Roughly one week after this action was opened, and two weeks before the Supplement to Complaint was filed, plaintiff submitted a cover letter to which he attached an affidavit and additional documentary evidence. Dkt. No. 6. Because plaintiff indicates in his cover letter that the affidavit and additional documentary evidence are offered in further support of his claims and request for injunctive relief, and does not ask the Court to attach these documents to his complaint, the Court does not consider this submission as an attempt to supplement the complaint with new claims arising out of events that allegedly occurred after the complaint was signed.

pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "[T]he purpose of a supplemental complaint is to allow the inclusion of new defendants and new claims arising since the date of the original pleading, if the new claims are 'adequately related to the original claims.'" *Smith v. Goord*, No. 04-CV-6432, 2006 WL 2850597, at *1 (W.D.N.Y. Sept. 22, 2006).

The Local Rules of Practice for this District require that any proposed supplemental pleading contain paragraphs that are numbered "consecutively to the paragraphs contained in the pleading that it seeks to supplement." N.D.N.Y. L.R. 7.1(a)(4). Although plaintiff has not filed a motion to supplement, and his proposed supplemental pleading does not include numbered paragraphs, the Court will overlook these procedural defects and accept the supplemental submission in light of plaintiff's pro se status and the early stage of this action.

Accordingly, and for the sake of clarity, the Clerk is directed to file as part of the complaint (1) a copy of the Claims and Supporting Documents, (Dkt. No. 3-4), immediately following the signature page of the complaint, and (2) a copy of the Supplement to Complaint, (Dkt. No. 11), immediately following the Claims and Supporting Documents insert. References in this Decision and Order will be made to the complaint as supplemented.[4]

In the future, plaintiff is advised that piecemeal submissions will not be considered or combined with other filings. Plaintiff is further advised that, to the extent he sought for the Court to consider one or more of his other filings as part of his complaint, he must file a complete pleading by way of a single document in the form required by Local Rule 10.1,

---

[4] As discussed more fully below, liberally construed, the Supplement to Complaint asserts wrongdoing against the Hearing Officer, "Babin," who presided over plaintiff's disciplinary hearing that began on March 26, 2019. The Clerk is therefore directed to amend the docket to add Hearing Officer Babin, Auburn Correctional Facility, as a defendant.

which will be treated as an amended complaint that supersedes the original pleading as supplemented.

### C. Summary of the Complaint as Supplemented

In his complaint, plaintiff asserts claims arising out of his confinement at Auburn Correctional Facility ("Auburn C.F.") and Wende Correctional Facility ("Wende C.F."). *See generally* Compl. The following facts are set forth as alleged by plaintiff in his complaint.

On September 18, 2018, while plaintiff was at Auburn C.F. "receiving notary services on many legal documents from [defendant] librarian Brenda Walsh[,]" defendant Corrections Officer Grady and defendant Corrections Officer Kirkwood entered the library and issued plaintiff a "disciplinary report regarding being out of place." Compl. at 22. Plaintiff explained that defendant Corrections Officer Wheeler "gave [him] permission to receive notary service from the law library[,]" but he was nonetheless placed in keeplock as a result of the charge. *Id.*

On September 25, 2018, Corrections Lieutenant Abate (not a party) found plaintiff not guilty on three of the five charges and removed him from keeplock status. Compl. at 22. As a result of the charges, plaintiff was denied access to "assistance [and] library materials" for eight days. *Id.*

On October 5, 2018, plaintiff was advised by defendant Corrections Officer Vendetti at 1:15 P.M. that he had an attorney visit. Compl. at 6. At 1:35 P.M., plaintiff met with his attorney who was handling his direct appeal. *Id.* Because the private attorney rooms remained under construction due to "contractor issue[s,]" plaintiff's meeting took place in the "common area with other visitors and inmates along with Corrections Officers." *Id.*

6

During the meeting, plaintiff's attorney advised plaintiff that he had been waiting to meet plaintiff for "at least two hours," and was told that the wait was because plaintiff was showering. Compl. at 6. Plaintiff asked the desk visiting room officer (not a party) why he was not notified earlier of his attorney's arrival, and the officer responded that defendant Vendetti told him that plaintiff was showering. *Id.*

Plaintiff's meeting with his attorney was "awkward and uncomfortable[,]" and ended prematurely at 3:00 P.M., when all daily visits conclude. Compl. at 6. Plaintiff filed a grievance regarding the inadequacies surrounding his meeting, and learned through the grievance process that "the first call" to notify plaintiff of his visitor occurred at 12:50 P.M. *Id.* The Inmate Grievance Review Committee (IGRC) granted plaintiff's grievance to the extent that the IGRC agreed that "visits should be called in a just and timely manner." *Id.* Plaintiff "agreed with the response and appealed to the Superintendent[,]" defendant McCarthy, who "upheld the findings" and granted the appeal to that extent. *Id.*

On October 20, 2018, while plaintiff was incarcerated at Wende C.F. for a court appearance, "[t]he visiting room reception officers" denied plaintiff a visit with his attorney. Compl. at 9. Plaintiff's visit was "scheduled as follow up from the shortened visit [he] had [with his attorney] on October 5, 2018[.]" *Id.*

On October 30, 2018, while plaintiff was incarcerated at Auburn C.F., defendant Vendetti prevented him from attending law library services by not opening his cell during "automatic law library callout." Compl. at 22.

On December 7, 2018, plaintiff's attorney traveled to Auburn C.F. for "a confirmed attorney visit[.]" Compl. at 9. Prior to this date, plaintiff's counsel had contacted defendant Liaison Officer Anthony Smith and defendant Liaison Associate Officer Leanne Callahan to

obtain approval for this visit.  *Id.* at 9, 11.  When the attorney arrived at Auburn C.F., he was incorrectly advised that plaintiff was "on a court transfer" and at Wende C.F.  *Id.* at 9. Although plaintiff was being housed at Wende C.F., he was moved there on November 28, 2018, following his placement in keeplock at Auburn C.F. the previous day.  *Id.*

On December 22, 2018, plaintiff "inquired about possible missing mail" to defendant Corrections Sergeant Sheftic and defendant Steward Vanni.  Compl. at 17.  Plaintiff did not receive a response to his inquiries.  *Id.*

On December 28, 2018, when plaintiff was back at Auburn C.F., defendant Walsh refused plaintiff's request to notarize certain documents after reading the contents of those documents.  Compl. at 24.

On December 31, 2018, at approximately 4:00 P.M., the water feed to plaintiff's toilet was shut off.  Compl. at 24.  Later that day, defendant Corrections Officer Remington conducted a random search of plaintiff's cell.  *Id.*  During the search, defendant Remington indicated on a cell search checklist that plaintiff's toilet was working even though it was not. *Id.*

The next day, defendant Corrections Officer Penello threatened plaintiff that his toilet would not be fixed if he asked about it again.  Compl. at 24.  On or about January 3, 2019, plaintiff was transferred to Wende C.F.  *Id.*

On January 16, 2019, plaintiff again raised a concern about missing mail to defendant Sheftic, as well as defendant Deputy of Programs Shanke.  Compl. at 17.  On January 30, 2019, plaintiff also complained to defendant Corrections Sergeant Carhardt about possible missing mail.  *Id.*  Plaintiff did not receive an "answer or resolution" from any of these

8

officials. *Id.*

On February 4, 2019, plaintiff received sixteen legal parcels from "multiple legal sources." Compl. at 17. Defendant Corrections Officer Powell brought the parcels to plaintiff at his cell. *Id.* The dates on the parcels "covered a time period" of November 29, 2018 through January 31, 2019. *Id.*

On February 22, 2019, plaintiff "was expecting [a] scheduled attorney visit around noon." Compl. at 12. As plaintiff was returning from lunch, he overheard a "company officer" state that "company 13 cell 24 has a visit." *Id.* The referenced cell belonged to plaintiff. *Id.*

"A few minutes later[, the] company officer opened cell 34." Compl. at 12. The inmate confined to that cell stated that he did not have a visit scheduled. *Id.* The A-man for Block C, defendant Corrections Officer Simmons, then "confirmed the visit was for an attorney for 13 company cell 34." *Id.* The inmate confined to that cell refused the visit, and plaintiff's cell was never opened. *Id.* As a result, plaintiff "missed the opportunity to visit with [his] attorney." *Id.*

The next day, plaintiff spoke with defendant Simmons. Compl. at 12. She "checked her board" from the previous day and acknowledged that she made a mistake. *Id.* However, on the same day that plaintiff was denied his attorney visit, his attorneys successfully met with another inmate at Auburn C.F. "without incident." *Id.*

In addition to submitting a grievance regarding this incident, plaintiff wrote to Corrections Sergeant Sirvent (not a party). Compl. at 12. On March 1, 2019, after meeting with plaintiff to discuss the incident, Sergeant Sirvent arranged for plaintiff to have a private telephone call with his attorney in the Media Center. *Id.* Plaintiff declined the arrangement

because "a phone call[,] although appreciated[,] isn't a visit." *Id.*

On March 3, 2019, plaintiff "received an erroneous disciplinary inmate misbehavior report" authored by defendant Corrections Officer Pickett, charging him with a disciplinary violation after officials were unable to locate a razor during a random search of plaintiff's cell. Compl. at 27. Although plaintiff produced the razor for defendant Corrections Officer Nowak, he was placed in keeplock the next day. *Id.*

On March 6, 2019, plaintiff spoke with defendant Nowak about the misbehavior report. Compl. at 27. Defendant Nowak acknowledged seeing the razor and indicated that he would be a witness for plaintiff at his disciplinary hearing. *Id.*

The next morning, plaintiff received "another erroneous disciplinary misbehavior report[,]" which was authored by defendant Nowak. Compl. at 27. The misbehavior report charged plaintiff with "not following a direct order and interference during . . . count." *Id.*

On March 8, 2019 and March 12, 2019, disciplinary hearings were conducted by different Corrections Lieutenants regarding the misbehavior reports. Compl. at 27. Plaintiff "was exonerated and found not guilty of all allegations" and removed from keeplock. *Id.* However, as a result of plaintiff's keeplock confinement, he "lost the time to work on [his] legal issues using the law library for research." *Id.*

On or about March 20, 2019, plaintiff was charged with violating multiple prison rules. Compl. at 28-29. As a result of the charges, plaintiff was afforded a Tier III disciplinary hearing, which began on March 26, 2019. *Id.* at 28. Defendant Babin presided over plaintiff's hearing, which was conducted without plaintiff having access to an employee assistant. *Id.*

After plaintiff identified fourteen witnesses and "provided an actual innocence statement," defendant Babin closed the hearing to investigate. Compl. at 28. During the adjournment, plaintiff was confined in the Special Housing Unit (SHU). *Id.*

The hearing was resumed on April 4, 2019, during which time defendant Babin indicated that he was unable to contact any of the witnesses plaintiff identified. Compl. at 28. Plaintiff then provided the names of five more staff officers as potential witnesses, and "stressed the need of providing the names of the other . . . three officers who were involved with the alleged incident." *Id.* Defendant Babin again adjourned the hearing. *Id.*

On April 11, 2019, plaintiff's hearing was resumed. Compl. at 28. Defendant Babin stated that he interviewed one corrections official, one nurse, and one inmate regarding the incident giving rise to the charges against plaintiff. *Id.* Plaintiff was not given an opportunity to provide defendant Babin with questions for these witnesses, and "no recorded testimony or written responses" from these witnesses was introduced. *Id.* The inmate who was questioned also "confirm[ed] the alleged incident was not committed by [plaintiff]." *Id.* at 29.

Defendant Babin found plaintiff guilty of several of the charges and sentenced him to thirty days of SHU confinement, without giving plaintiff credit for the twenty-three days of SHU confinement he had served since the charges were brought against him. Compl. at 29. Defendant Babin also imposed a loss of one month of "good behavior" time. *Id.*

In addition to the aforementioned events, between August 2018 and March 2019, plaintiff was also denied access to the law library, legal assistance, notary services, and legal documents by various corrections officials at Auburn C.F. and Wende C.F., lost an attorney, and experienced problems with accessing a properly working computer and typewriter.

Compl. at 20, 22-27. With respect to these deprivations that occurred as Auburn C.F., plaintiff names Auburn C.F., as well the following individuals, as defendants: Corrections Counselor Jones; Law Library Supervisor Michael C. Polcovich; Corrections Officer Vullwhite; Corrections Officer Knapp; Corrections Officer Vanderwerff; Corrections Officer "D"; Corrections Officer Milnane; Corrections Sergeant Carhart; Corrections Captain Norris; Deputy of Security Corey; Deputy Superintendent Schenk; and the Commissioner of the Commission of Correction Thomas J. Loughren.[5]

Construed liberally, plaintiff asserts the following claims with respect to alleged wrongdoing that occurred during his incarceration at Auburn C.F.: (1) First Amendment access-to-courts claims based on the alleged denials of access to the law library, legal assistance, legal property, typewriter and computer services, and counsel; (2) a First Amendment free-flow-of-mail claim; (3) a First Amendment claim for denial of access to notary services; (4) a First Amendment retaliation claim; (5) First and Sixth Amendment interference with access-to-counsel claims; (6) Fourteenth Amendment due process claims based on the alleged issuance of false misbehavior reports and imposition of disciplinary penalties; (7) an Eighth Amendment conditions-of-confinement claim; and (8) a claim for violations of New York State Department of Corrections and Community Supervision (DOCCS) directives.[6]

---

[5] As noted below in Section III.D, plaintiff's claims arising out of his confinement at Wende C.F. are transferred to the Western District of New York.

[6] Plaintiff also asserts a Fourteenth Amendment substantive due process claim. *See* Compl. at 20. "Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense . . . but not against government action that is 'incorrect or ill-advised'" *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal citations omitted). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833,

Plaintiff has sued the named defendants in their individual and official capacities, and seeks both monetary and injunctive relief. Compl. at 2, 6, 9, 12, 17, 20. For a complete statement of plaintiff's claims, reference is made to the complaint.

### D. Severance and Transfer of Claims Arising Out of Wende C.F.

Rule 21 of the Federal Rules of Civil Procedure permits the Court to sever any claim against a party and proceed with that claim separately. Fed. R. Civ. P. 21. In deciding whether to sever a claim, the Court should consider the following:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999). "A claim may be severed based upon lack of a significant relationship between defendants or solely for the purpose of facilitating transfer. Where the administration of justice would be materially advanced by severance and transfer, a court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against other defendants." *Cain v. New York State Bd. of Elections*, 630 F. Supp. 221, 225-26 (E.D.N.Y. 1986). "A decision to sever lies within the discretion of the Court." *Id.* at 225.

Here, plaintiff's claims arising out of his confinement at Wende C.F. are more appropriately heard in the Western District of New York, where that facility is located. The allegations pertaining to Wende C.F. involve different defendants than the allegations

---

847 n. 8 (1998)). The Court does not construe the complaint to assert such a claim.

pertaining to Auburn C.F., and, although plaintiff may assert similar legal theories in support of some of his claims arising out of both locations, the witnesses and documentary proof will be distinct.  In addition, the Court is sensitive to the burden, upon both the individuals and the taxpayers of New York, of requiring individuals who are employed and most likely reside in the Western District to travel to the Northern District to defend against allegations that occurred in the Western District.

For the foregoing reasons, plaintiff's claims arising out of wrongdoing that allegedly occurred at Wende C.F. (and the named defendants against whom those claims are asserted) are severed from this complaint and venue of those claims (and defendants) is transferred to the Western District in the interests of justice and judicial efficiency.  The Court makes no ruling as to the sufficiency of the claims asserted against the named defendants from Wende C.F., thereby leaving that determination to the Western District of New York.

### E.    Analysis of Claims Arising Out Auburn C.F.

Plaintiff asserts claims pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *German v. Fed. Home Loan Mortg. Corp*., 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted).  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. Eleventh Amendment Immunity

The Eleventh Amendment has long been construed as barring a citizen from bringing

a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. New York*, No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

State immunity extends not only to the states, but also to state agencies. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf,* 506 U.S. 139, 142-47 (1993); *McGinty v. New York,* 251 F.3d 84, 95 (2d Cir. 2001) ("The Eleventh Amendment extends immunity not only to a state, but also to entities considered 'arms of the state.'"); *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) ("An official arm of the state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself."). Thus, plaintiff's claims against Auburn C.F. fail because it is a "branch" of the New York State Department of Corrections and Community Supervision, and is therefore absolutely immune from this lawsuit. *Will v. Michigan Dep't of Police*, 491 U.S. 58, 71 (1989); *Rivera v. Goord*,

119 F. Supp. 2d 327, 336 (S.D.N.Y. 2000) (defendant correctional facility immune from suit since it is a branch of a state agency, the Department of Corrections); *Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("[T]he New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself."); *Millhouse v. New York State Dep't of Corr. Servs*., No. 9:09-CV-1297 (LEK/RFT), 2009 WL 10675929, at *3 (N.D.N.Y. Dec. 31, 2009) ("[A] state correctional facility, which has no separate legal existence, is generally referred to as a "branch" of DOCS and, as such, is immune from § 1983 liability.").

Similarly, plaintiff's claims for money damages against the named defendants in their official capacities fails because the Eleventh Amendment bars suits for damages against state officials acting in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.")

Accordingly, to the extent that plaintiff seeks any relief against Auburn C.F., or monetary damages under Section 1983 against any non-severed defendant in his or her official capacity, such claims are dismissed with prejudice pursuant to 28 U.S.C.

§ 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment.[7]

## 2. Access-to-Courts Claims

In *Bounds v. Smith*, the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). The right of access to the courts is also implicated when a prisoner experiences interference with his mail. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

The "right of access to the courts" requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds*, 430 U.S. at 828, *modified on other grounds by Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004).[8] "However, this right is not 'an abstract, freestanding right . . . .' and cannot ground a Section 1983 claim without a showing of 'actual injury.'" *Collins v. Goord*, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 351).

To state a claim for denial of access to the courts, a plaintiff must assert

---

[7] In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities). In this case, as discussed more fully below, plaintiff has not alleged facts which plausibly suggest the existence of an ongoing violation of law or the Constitution. *See generally* Compl.

[8] "[A] person's right of access to the courts has been found to arise not only under the First Amendment but under other parts of the Constitution, including the Due Process Clause of the Fourteenth Amendment." *Lasher v. Dagostino*, No. 9:16-CV-0198 (BKS), 2016 WL 1717205, at *4 (N.D.N.Y. Apr. 28, 2016) (collecting cases).

non-conclusory allegations demonstrating that (1) the defendant acted deliberately, and (2) the plaintiff suffered an actual injury. *Lewis*, 518 U.S. at 353; *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 261 (N.D.N.Y. 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").

"A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik,* No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999). Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 349, 351-53 (noting that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense"). "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

The Supreme Court has stated that in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 415-16. "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417-18 (footnote omitted).

"Finally, . . . the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Rather, the injury must be to an inmate's ability "to attack

18

[his] sentence[ ], directly or collaterally, [or] . . . to challenge the conditions of [his] confinement." *Id*. at 355. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*.

Here, plaintiff does not allege that he has been continuously denied access to legal mail, legal materials, legal assistance, or the law library while incarcerated at Auburn C.F. Rather, he alleges that he was denied access to the law library on three isolated occasions, experienced a delay in receipt of legal mail, was deprived of legal property during transports (which was eventually returned to him), and at times was unable to use a typewriter or computer because the machines did not work. Compl. at 20, 22-27.[9] Moreover, the complaint is devoid of any allegations which plausibly suggest that plaintiff suffered an "actual injury" in any legal proceeding as a result of the alleged issues plaintiff experienced with access to his mail, the law library, legal assistance, legal property, or a properly functioning typing machine. Indeed, the complaint lacks any allegations explaining how any of these alleged issues "hindered" his pursuit of a legal claim. *Lewis*, 518 U.S. at 351 ("[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." (internal quotation marks and citations omitted); *see Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998) (dismissing claim for interference with access to courts where plaintiff did not make showing as to how challenged conduct hindered him).

Accordingly, plaintiff's First Amendment access-to-courts claim is dismissed pursuant

---

[9] Plaintiff alleges that he was denied access to the law library at Auburn C.F. on the following days: October 30, 2018; November 10, 2018; and December 22, 2018. Compl. at 22, 24. Plaintiff further alleges facts which plausibly suggest that he received law library services on October 31, November 3, November 6-9, November 11, and December 28, 2018. *Id.*

to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Free-Flow-of-Mail Claim

"In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis*, 320 F.3d at 351. A prisoner's mail may only be restricted to further "'one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Id*. (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). "The First Amendment protects prisoners' access to mail directly, unlike the right of access to courts, which protects prisoners' access to mail only derivatively and with respect to given claims." *Bellezza v. Holland*, No. 09-CV-8434, 2011 WL 2848141, at *6 (S.D.N.Y. July 12, 2011) (dismissing access-to-the-courts claim for failure to allege injury, but holding that plaintiff adequately alleged a violation of his right to send and receive mail). "It is thus not necessary to allege actual injury when asserting a violation of one's right to the free flow of mail." *Antrobus v. City of New York*, No. 11-CV-2524, 2014 WL 1285648, at *4 (S.D.N.Y. Mar. 27, 2014) (citations omitted).

As courts have attempted to balance the competing interests implicated when facilities place restrictions on prison mail, the courts have "consistently afforded greater protection to legal mail than to non-legal mail[.]" *Davis*, 320 F.3d at 351. "While a prisoner has a right to be present when his legal mail is opened, . . . an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis*, 320 F.3d at 351 (citations omitted). However, in *Washington v. James*, the Second Circuit found that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an

ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis*, 320 F.3d at 351 (citing *Washington*, 782 F.2d at 1139); *see Turner v. Safley*, 482 U.S. 78, 84-91 (1987) (prison regulations impinging constitutional rights must be "reasonably related to legitimate penological interests").

Here, plaintiff alleges that he experienced a delay in receiving "sixteen legal . . . parcels" addressed to him "from multiple legal sources." Compl. at 17. Plaintiff also specifically identifies each piece of mail, its date, the dates he was incarcerated at Auburn C.F., and the date he received this mail. *Id*. at 19.

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's free-flow-of-mail claim against defendants Sheftic, Vanni, Shanke, and Carhardt survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to defendants Powell and McCarthy. The only allegation in the complaint regarding defendant Powell is that he delivered plaintiff sixteen parcels of mail on February 4, 2019. Compl. at 17. Plaintiff does not allege that he made defendant Powell aware, prior to this date, that he was missing mail. Nor does plaintiff allege any facts which plausibly suggest that defendant Powell was responsible for the delay in plaintiff's receipt of his mail. Thus, there is no basis for the Court to infer that defendant Powell, solely through delivering plaintiff his mail, was personally involved in the alleged constitutional violation.

With respect to defendant McCarthy, the complaint alleges that he is "ultimately

responsible for subordinates['] actions."  Compl. at 17.  Prior to *Iqbal*, the Second Circuit held

that supervisory personnel may be considered "personally involved" in an alleged

constitutional violation only if they (1) directly participated in the violation, (2) failed to remedy

that violation after learning of it through a report or appeal, (3) created, or allowed to

continue, a policy or custom under which the violation occurred, (4) had been grossly

negligent in managing subordinates who caused the violation, or (5) exhibited deliberate

indifference to the rights of inmates by failing to act on information indicating that the violation

was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*,

781 F.2d 319, 323-24 (2d Cir. 1986)).[10]

Plaintiff does not allege any facts which plausibly suggest that he complained to

defendant McCarthy about missing mail, or that defendant McCarthy otherwise became

aware of plaintiff's missing mail before it was delivered to him.  Nor does he allege facts

which plausibly suggest that he was denied access to legal mail pursuant to a custom or

policy at Auburn C.F.  Moreover, a "failure to remedy" theory of liability is not available

against a supervisor with respect to discrete and completed violations.  *See Jackson*, 256

F.3d at 96 (citing *Blyden*, 186 F.3d at 259, 264 and *Wright*, 21 F.3d at 501); *see also Young

v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) ("[T]he wrong must have been ongoing or

otherwise capable of mitigation at the time the supervisory official was apprised thereof.").

Thus, plaintiff's claim against defendant McCarthy can only be based on the fourth *Colon*

---

[10]  The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability.  *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal* ] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at 139)).  For purposes of this Decision and Order, the Court assumes that all five categories under *Colon* remain valid.

factor.

"An allegation that a defendant failed to adequately train or supervise subordinates implicates the fourth *Colon* factor, *i.e.*, that 'the defendant was grossly negligent in supervising subordinates who committed the wrongful acts.'" *Samuels v. Fischer*, 168 F. Supp. 3d 625, 638 (S.D.N.Y. 2016) (quoting *Colon*, 58 F.3d at 873). To support a finding of personal involvement on that basis, a "plaintiff must show that the defendant knew or should have known that there was a high degree of risk that his subordinates would behave inappropriately, but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to Plaintiff." *Id*. (internal quotation marks and citation omitted). "Vague and conclusory allegations that a supervisor failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability." *White v. Fischer*, No. 9:09-CV-0240 (DNH/DEP), 2010 WL 624081, at *6 (N.D.N.Y. Feb. 18, 2010).

The complaint is devoid of any allegations which plausibly suggest that defendant McCarthy knew or should have known there was a high degree of risk that his subordinates would behave inappropriately with respect to the handling of legal mail. *See Nash v. McGinnis*, 585 F. Supp. 2d 455, 460 (W.D.N.Y. 2008) ("Although plaintiff need not plead facts in great detail, the formulaic allegation that [the Superintendent] was aware of the alleged violations and did nothing to stop them from occurring, without some factual allegations to explain the basis for that conclusion, is insufficient to render it plausible that [the Superintendent] was personally involved in the alleged constitutional deprivations."); *Diaz v. Burns*, No. 6:10-CV-6595, 2013 WL 5951866, at *5 (W.D.N.Y. Nov. 6, 2013) ("Essentially Plaintiff is asking the Court to hold that the filing of grievances is sufficient to put

23

a supervisory official on notice that the grievant will be subjected to unconstitutional conduct at the hands of his or her staff members. The Court agrees with Defendants that Plaintiff has not sufficiently alleged personal involvement by Commissioner Fischer and Superintendent Kirkpatrick in any of the asserted constitutional violations."). Rather, plaintiff's claim against defendant McCarthy is entirely conclusory, and appears to be based solely on his role as Superintendent of Auburn C.F., which is not a basis for supervisory liability. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam) ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (internal quotation marks omitted)); *Rose v. Garritt*, No. 16-CV-3624, 2018 WL 443752, at *5 (S.D.N.Y. Jan. 16, 2018) ("To the extent Plaintiff alleges that Lee and Burnett were aware of the violent proclivities of Freeman and C.O. Miller before the excessive force incident, the Complaint does not plausibly allege that Lee and Burnett were personally on notice of the likelihood that they would assault Plaintiff."); *Rahman v. Fischer*, No. 08-CV-4368, 2010 WL 1063835, at *5 (S.D.N.Y. Mar. 22, 2010) (finding allegation that defendant "received 'several' complaints of staff assaulting prisoners" as "an insufficient allegation of notice of any policy or custom of assaults by correction officers").

Accordingly, plaintiff's free-flow-of-mail claim against defendants Powell and McCarthy is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. First Amendment Access to a Notary

The Supreme Court has also held that "indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." *Bounds*, 430 U.S. at 824-25. "However, '[t]here is no constitutional right to a notary service five days a week,' . . . and 'it is within the discretion of

24

prison officials to establish reasonable procedures governing access to prison legal facilities, including access to notary publics.'" *Flowers v. Dalsheim*, 826 F. Supp. 772, 774-75 (S.D.N.Y. 1993) (quoting *Washington v. Vincent*, 361 F. Supp. 942, 943 (S.D.N.Y. 1973)).

The governing DOCCS guidelines, set forth in Directive No. 4483, call upon facilities to establish a schedule ensuring "inmates in general population with reasonable access to the services of a notary public within 72 hours of request excluding weekends and holidays," and "[i]nmates confined to special housing, keeplock and protective custody" with access to "notarial services at least two times per week."[11]  In *Washington v. Vincent*, the court upheld facility procedures providing inmates with notary services at least twice per week.  *See* 361 F. Supp. at 943.

In this case, plaintiff alleges that he obtained notary services from defendant Walsh on September 18, 2018, but thereafter experienced complications.  Compl. at 22-27.  More specifically, plaintiff alleges that on October 31, 2018, defendant Walsh denied him notary services, and between November 6 and November 9, 2018, no notary was available in the prison library, which prevented him from obtaining notary services until November 11, 2018. *Id.* at 22.  Plaintiff further alleges that he submitted a request for notary services on December 22, 2018, which was ignored, and on December 28, 2018, defendant Walsh agreed to notarize only certain of the documents plaintiff sought to have notarized.  *Id.* at 24. In addition, on February 6, 2019, defendant Walsh refused to notarize plaintiff's "legal requests related to DOCCS[,]" and advised him that she had been "instructed not to." *Id.* at 27.

---

[11]  The Court takes judicial notice of Directive 4483.  *See, e.g.*, *Williams v. Fischer*, No. 11-CV-0379 (NAM/TWD), 2015 WL 1137644, at *4 n.7 (N.D.N.Y. Mar. 11, 2015) (taking judicial notice of DOCCS Directive 4202); *Phelan v. Zenzen*, No. 10-CV-06704, at *4 (W.D.N.Y. Nov. 6, 2012) (taking judicial notice of DOCCS Directive 4421).

In total, these allegations plausibly suggest, at most, that plaintiff experienced an eleven-day delay in access to notary services on one occasion, a seven-day delay in access to notary services on a separate occasion, and a refusal to have certain documents notarized on two occasions. Plaintiff does not allege any facts which plausibly suggest that any of the documents that defendant Walsh refused to notarize were legal documents that needed to be notarized for a legal proceeding. Nor does he allege facts which plausibly suggest that he suffered an actual injury as a result of either the delays in access to a notary, or the refusal to notarize certain documents. *See Ramsey v. Coughlin*, 1 F. Supp. 2d 198, 205 (W.D.N.Y. 1998) (slow response time for notary services not prejudicing ongoing lawsuit states no constitutional violation); *Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir. 1982) (inmate required to wait ten days to have a document notarized who suffered no "actual injury" as a result of that delay did not state a claim for denial of access to the courts).

Accordingly, plaintiff's First Amendment denial of access to notary services claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5. Retaliation Claim

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (*quoting Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant

took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (*quoting Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). Finally, even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).

The filing of a prison grievance is a constitutionally protected activity for the purpose of meeting the first prong of the retaliation test. *See Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir. 1988) (same).

Here, plaintiff alleges that on October 5, 2018, defendant Vendetti delayed plaintiff's visit with his criminal appellate attorney. Compl. at 6. Plaintiff has also attached to his complaint copies of a grievance and Superintendent's response regarding this incident, wherein plaintiff states in the "Appeal Statement," among other things, that "[o]n 8/30/18 [he] submitted a grievance which involved [defendant] Vendetti[, and] consisted of the same issue (not being released for institution privileges)[.]" *Id*. at 7. In addition, plaintiff alleges that defendant Venedtti denied him law library services on October 30, 2018, by refusing to open his cell door, in retaliation for a "previous grievance." Compl. at 22.[12]

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's retaliation claim against defendant Vendetti survives sua sponte review and requires a response. In so ruling, the Court expresses no

---

[12]  Plaintiff also alleges in conclusory fashion that he has "grieved some . . . issues" related to law library services and legal assistance, and "due to this . . . had retaliatory acts committed against [him] in treatment cell confinement[.]" Compl. at 20. These allegations are entirely conclusory. Moreover, the complaint fails to identify any individual(s) other than defendant Vendetti who allegedly took "adverse action" against plaintiff in retaliation for him filing one or more grievances.

opinion as to whether this claim can withstand a properly filed dispositive motion.

### 6. Access-to-Counsel Claims

The Supreme Court long ago held that "in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights[,] . . . inmates must have a reasonable opportunity to seek and receive the assistance of attorneys." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *partially overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). In addition, under the Sixth Amendment, a criminal defendant has the right to effective assistance of counsel. This protection "applies to a defendant's trial and first appeal as of right, [though] not to appeals afforded on a discretionary basis, collateral proceedings, or civil proceedings such as civil rights claims challenging prison conditions." *Bourdon*, 386 F.3d at 96 (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555-57 (1987)).

These protections, however, have limits, as the Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89 (upholding, among other things, restrictions on inter-inmate correspondence as reasonably related to prison officials' legitimate security concerns). In the specific context of criminal defendants' access to attorneys, the Second Circuit has found that regulations restricting defendants' contact with their attorneys are "unconstitutional where they unreasonably burdened the inmate's opportunity to consult with his attorney and to prepare his defense." *Benjamin v. Fraser*, 264 F.3d 175, 187 (2d Cir. 2001) (quotation and citation omitted). "Examples of unconstitutional limits on prisoners' rights to counsel include a ban on all visits by paralegals employed by criminal defense counsel and repeated delays in meetings between prisoners

and attorneys that resulted in attorneys forgoing the meetings." *Schick v. Apker*, No. 07-CV-5775, 2009 WL 2016926, at *2 (S.D.N.Y. July 10, 2009) (citations omitted). Conversely, courts have found that denying an inmate one method of communicating confidentially with his attorney does not give rise to a constitutional violation. *Lowery v. Westchester Cty. Dep't of Correction*, No. 15-CV-4577, 2017 WL 564674, at *3-4 (S.D.N.Y. Feb. 10, 2017) (collecting cases); *Groenow v. Williams*, No. 13-CV-3961, 2014 WL 941276, at *7 (S.D.N.Y. Mar. 11, 2014) ("Because Groenow has not alleged that he was denied all opportunities to consult confidentially with his attorney, he has not plausibly alleged a Sixth Amendment violation" even though "monitoring telephone calls with his attorney most likely had a chilling effect on Groenow's ability to communicate effectively with his attorney"); *Schick*, 2009 WL 2016926, at *2 (finding, where the plaintiff "neither allege[d] nor offer[ed] evidence that defendants restricted other means of access to his attorneys, such as mail, monitored telephone calls, and in-person visits regarding pending criminal matters[,]" that refusing to grant plaintiff's request for an unmonitored call with his criminal appellate attorney on three occasions "did not 'unreasonably burden' his opportunity to consult with counsel and to prepare his appeal"); *Bellamy v. McMickens*, 692 F.Supp. 205, 214 (S.D.N.Y. 1988) ("[S]tates have no obligation to provide the best manner of access to counsel. Rather, restrictions on inmates' access to counsel via the telephone may be permitted as long as prisoners have some manner of access to counsel.").

Here, plaintiff alleges that on two occasions between August 2018 and March 2019, while he was incarcerated at Auburn C.F., he was denied a scheduled visit with his criminal appellate attorney. Compl. at 9, 12. Plaintiff further alleges that on one occasion when he met with his attorney, his visit was delayed, and occurred in an area in which other corrections officials and inmates were present. *Id*. at 6.

As an initial matter, with respect to the two scheduled visitations that did not occur, the complaint lacks any allegations which plausibly suggest that plaintiff missed these visits as a result of a prison rule, policy, or practice. Indeed, plaintiff does not allege that any of the named defendants were personally involved in more than one incident in which a scheduled visit did not occur. Nor does plaintiff allege that he was prevented from speaking with his criminal appellate attorney by telephone before or after either missed visit. In fact, by his own allegations, plaintiff was offered an opportunity to have a "semi-private" telephone call with his appellate attorney after one of his scheduled visits did not occur, and he turned down this offer. Compl. at 12, 27. Thus, plaintiff has failed to allege facts which plausibly suggest that any of the named defendants "unreasonably burdened [his] opportunity to consult with his attorney and to prepare his defense" through actions which caused him to miss two visits.

Similarly, with respect to plaintiff's shortened visit with his attorney in a non-private area of Auburn C.F., as noted, the complaint lacks allegations which plausibly suggest that plaintiff was denied other means of communicating privately with his criminal appellate attorney before or after this visit. Moreover, denying an inmate a private room to meet with his attorney on one occasion, by itself, does not amount to a constitutional violation. *See Schick*, 2009 WL 2016933, at *10 ("The Constitution simply does not guarantee Plaintiff unlimited communications with several attorneys, or the means of communication that Plaintiff might consider the most convenient or productive.").

Accordingly, plaintiff's access-to-counsel claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 7. False Misbehavior Report Claims

Plaintiff alleges that he was issued false misbehavior reports on the following dates

and by the following defendants: (1) on March 3, 2019, by defendant Pickett; (2) on March 6, 2019, by defendant Nowak; and (3) on March 20, 2019, by an unidentified official. Compl. at 27-28.[13]

It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988)); *accord Pittman v. Forte*, No. 9:01-CV-0100, 2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.); *see Santana v. Olson*, No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007) ("[T]he filing of a false behavior report by a correctional officer does not state a claim for relief."). The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more, such as "retaliation against the prisoner for exercising a constitutional right." *Boddie*, 105 F.3d at 862. Here, plaintiff alleges no facts which plausibly suggest that any of the named defendants who allegedly issued him a false misbehavior report did so in retaliation for his exercise of a constitutional right. In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing."[14] *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (rejecting prisoner's "but for" argument as to guard who prepared misbehavior report but was not involved in Tier III hearing) (citation omitted).

---

[13] Plaintiff also alleges that defendants Grady and Kirkwood issued him a misbehavior report on September 18, 2018, and that three of the five charges in that report were dismissed, but he does not allege that the misbehavior report was entirely unwarranted or based on false statements. *See* Compl. at 22.

[14] "The only constitutional violation that could occur in this situation is if plaintiff were not provided adequate due process in any proceeding which is based upon the misbehavior report. In that case, the claim is not based on [the] truth or falsity of the misbehavior report but instead on the conduct of the hearing itself." *Santana*, 2007 WL 2712992, at *2. Plaintiff's Fourteenth Amendment due process claim arising from one of his disciplinary hearings is addressed separately, below.

Accordingly, plaintiff's false misbehavior report claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## 8. Disciplinary Due Process Claim

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). Due process generally requires that the state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

An inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The duration of the challenged confinement, while not determinative, is a significant factor under *Sandin*. The Second Circuit generally takes the position that normal confinement in a segregated housing unit of 101 days or less does not constitute an "atypical and significant hardship" under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999)).[15] The "atypicality" inquiry under *Sandin* is normally a question of law. *Colon*, 215 F.3d at 230-31; *Sealey*, 197 F.3d at 585. In making that

---

[15] A New York state inmate confined in SHU is placed in a solitary confinement cell for twenty-three hours a day. The inmate may exercise in the yard for one hour each day; is limited to two showers a week; and may not work or attend programming. *See Colon v. Howard*, 215 F.3d 227, 230 (2d Cir. 2000); N.Y. Comp. Codes R. & Regs., tit. 7, §§ 304.1-.14 (2008). An inmate on "keeplock" is confined to his cell, room or housing unit and does not enjoy full participation in the normal prison routine. *See Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); N.Y. Comp. Codes R. & Regs. tit. 7, § 251-1.6 (2008).

determination the Court must consider the specific circumstances of the confinement, including both the duration and the conditions thereof. *Id.*

The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563- 67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id.* (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

Here, liberally construed, plaintiff's complaint alleges that defendant Babin denied him due process during his disciplinary hearing arising out of charges in a misbehavior report issued on March 20, 2019, by refusing to call or interview certain witnesses, not allowing him to question the witnesses that were interviewed, and disregarding a witness's statement of plaintiff's innocence. Compl. at 28-29. The complaint further alleges that defendant Babin sentenced plaintiff to thirty days of SHU confinement beyond the twenty-three days plaintiff spent in SHU while awaiting the completion of his disciplinary hearing, as well as one month of lost good time credits. *Id.* at 29.

As an initial matter, plaintiff filed his supplemental pleading regarding his disciplinary sentence on the same date that the sentence was imposed. *See* Compl. at 28-29. As of that date, plaintiff had served only twenty-three days in SHU while awaiting the completion of his disciplinary hearing. *Id.*

It is impossible that plaintiff could have administratively appealed or exhausted a claim arising out of his disciplinary hearing at the time he filed his supplemental pleading. Thus,

plaintiff's claim is premature.

In any event, neither a twenty-three day confinement in SHU, nor a fifty-three day confinement in SHU, by itself, implicates atypicality. *See Colon*, 215 F.3d at 231; *Elleby v. Martucello*, No. 9:16-CV-1335 (MAD/DEP), 2018 WL 3769965, at *3 (N.D.N.Y. Aug. 9, 2018) ("The Court notes that Plaintiff was sentenced to 90 days in SHU which, without additional allegations, is insufficient to establish that he suffered from an atypical and significant confinement as required by *Sandin*.").  Because plaintiff has not even completed his disciplinary sentence, and the complaint is totally devoid of any facts regarding the conditions of his SHU confinement during the twenty-three day period he has already served, there is no basis for this Court to infer that plaintiff's SHU conditions differed in any way from normal SHU conditions, or that the confinement was an atypical and significant hardship in relation to the ordinary incidents of prison life.  Thus, plaintiff has also failed to plead the existence of a valid liberty interest with respect to his SHU confinement.  *See, e.g.*, *Elleby*, 2018 WL 3769965, at *3 ("Plaintiff does not allege that the conditions in which he was kept were more onerous than normal SHU conditions. Because Plaintiff fails to allege that he suffered from an atypical and significant confinement, Magistrate Judge Peebles correctly found Plaintiff's due process claim should be dismissed."); *Shuler v. Brown*, No. 9:07-CV-0937, 2009 WL 790973 (TJM/GHL), at *1, *9 (N.D.N.Y. Mar. 23, 2009) (adopting the view "that a motion to dismiss can be granted where a prisoner who served less than 101 days in the SHU alleges that his procedural due process rights were violated but does not allege conditions more severe than normal SHU[,]" noting that a prisoner's right to relief under a procedural due process theory based solely on a contention "that his SHU confinement lasted for a period of something less than 101 days, without alleging that he served that SHU term under conditions more severe than normal SHU conditions, . . . is purely speculative").

34

Based upon the foregoing, plaintiff's due process claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[16]

### 9. Conditions-of-Confinement Claim

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480, and (2) the defendants acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991).

---

[16] The Court would also note that plaintiff's disciplinary sentence involves "mixed sanctions," *i.e.*, "sanctions that affect both (a) the duration of his imprisonment and (b) the conditions of his confinement." *Peralta v. Vasquez*, 467 F.3d 98, 103 (2d Cir. 2006). In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a Section 1983 action seeking money damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless that "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck*, 512 U.S. at 487 (internal citation omitted). In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court made clear that *Heck*'s favorable termination rule applies to challenges made under Section 1983 to procedures used in disciplinary proceedings that deprived a prisoner of good time credits. *See Peralta*, 467 F.3d at 103. In *Peralta*, the Second Circuit held that "a prisoner subject to such mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but . . . he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement.*" *Id.* (emphasis in original).

The first prong is objective and requires that prison officials provide inmates with "basic human needs, one of which is 'reasonable safety.'" *Helling v. McKinney*, 509 U.S. 25, 30, 33 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs*., 489 U.S. 189, 199 (1989)). "The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry." *Hayes v. N.Y.C. Dep't of Corr*., 84 F.3d 614, 620 (2d Cir. 1996). In particular, "a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Id*. As the Supreme Court has made clear, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, plaintiff alleges that the water feed to his toilet was turned off on December 31, 2018, at approximately 4:00 P.M. Compl. at 24. Plaintiff further alleges that at some point later that day, defendant Remington became aware that plaintiff's toilet was not working when he conducted a random search of plaintiff's cell, and the next day, defendant Penello also became aware of the issue. *Id*.

Plaintiff does not allege when his toilet began working again.[17] Moreover, plaintiff does not allege that he experienced any complications as a result of not having a properly functioning toilet, either in the form of exposure to human waste or physical discomfort caused by an inability to use the toilet in his cell. Accordingly, the complaint fails to allege facts which plausibly suggest that the conditions of plaintiff's confinement resulted in

---

[17] Plaintiff separately alleges that he was transferred to Wende C.F. at some point on January 3, 2019. Compl. at 19. Thus, at most, plaintiff did not have a properly working toilet for roughly three days. However, the Court has no basis to infer that the duration of the alleged deprivation was anything more than several hours.

"unquestioned and serious deprivations of basic human needs." *See, e.g.*, *Thomas v. Demeo*, No. 15-CV-9559, 2017 WL 3726759, at *6 (S.D.N.Y. Aug. 28, 2017) (no claim for unsanitary cell conditions, since plaintiff did not allege details showing "the duration and the severity of [his] experience being exposed to unsanitary conditions" (quoting *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)); *Whitted v. Lazerson*, No. 96-CV-2746, 1998 WL 259929, at *3 (S.D.N.Y. May 21, 1998) ("The temporary deprivation of the right to use the toilet, in the absence of serious physical harm or a serious risk of contamination, simply does not rise to the level of an Eighth Amendment violation."); *Odom v. Keane*, No. 95-CV-9941, 1997 WL 576088, at *4-5 (S.D.N.Y. Sept.17, 1997) (Sotomayor, J.) (holding that the absence of a working toilet in one's prison cell for approximately ten hours, absent an allegation that the prisoner risked contamination by contact with human waste, "does not rise to the level of cruel and unusual punishment").

In addition, while plaintiff identifies two defendants who were allegedly aware that plaintiff did not have a working toilet less than one day after the issue arose, the complaint lacks any allegations which plausibly suggest that either of these individuals were also aware that plaintiff faced a substantial risk of serious harm based on the non-working toilet. Thus, the complaint also fails to allege facts which plausibly suggest that any named defendant from Auburn C.F. acted with "deliberate indifference" to plaintiff's basic human needs.

Accordingly, plaintiff's conditions-of-confinement claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 10. Violation of DOCCS Directives

In one section of the complaint, plaintiff alleges that "staff officers" from Auburn C.F. have failed to "follow or respect their own directives on how to handle legal work only in the

presence of an inmate." *See* Compl. at 20. A section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations. *See Hyman v. Holder*, No. 96-7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001) (concluding that allegations that prison officials failed to follow prison regulations are not sufficient to give rise to a Section 1983 claim). Because an official's failure to comply with a DOCCS directive does not give rise to a Section 1983 claim, all claims asserted in plaintiff's complaint on that basis are dismissed pursuant to 28 U.S.C. 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## IV.    PRELIMINARY INJUNCTION MOTION

Preliminary injunctive relief "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010). To prevail on a motion for preliminary injunctive relief, a plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *Id*. at 35; *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011). However, when the moving party seeks a mandatory injunction that alters the status quo by commanding a positive act, the burden is "even higher." *Cacchillo*, 638 F.3d at 405-06; *see Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996). Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is

entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Markets*, 598 F.3d at 35 n.4 (internal quotation marks omitted).

"'A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983). Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley*, 559 F.3d at 118 (internal citation and quotation marks omitted).

Plaintiff's Preliminary Injunction Motion seeks wide-ranging affirmative relief addressing potential future harm associated with cell searches, attorney visits, harassment, and access to mail, the law library, legal materials, and a working typewriter. *See* Preliminary Injunction Motion at 1-2. Plaintiff essentially seeks an order from this Court directing DOCCS officials to properly follow DOCCS Directives and not violate plaintiff's constitutional rights. *Id*. Plaintiff's request is denied for several reasons.

First, the only claims that now remain in this action are plaintiff's retaliation and free-flow-of-mail claims. Plaintiff has not explained how his requested relief bears any relationship to these claims, which relate to discrete events that occurred on and before

February 4, 2019, *i.e.*, more than two months before plaintiff filed his motion.[18]

Second, much, if not all, of the injunctive relief plaintiff seeks would require restrictions placed on officials who are not defendants in the present action. Injunctive relief is available against non-parties only under very limited circumstances, none of which are present here. *See* Fed. R. Civ. P. 65(d)(2); *Doctor's Associates, Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999); *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988); *see also In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

Third, plaintiff's request for DOCCS officials to properly follow DOCCS Directives and not violate his constitutional rights is tantamount to a request that all officials at Auburn C.F. "obey the law." "Obey the law" injunctions are vague, do not require a defendant to do anything more than that already imposed by law, subject the defendant to contempt rather than statutorily prescribed sanctions, and are not readily capable of enforcement. As such, these injunctions are not favored. *See N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941); *see also Rowe v. New York State Division of Budget*, No. 1:11-CV-1150 (LEK/DRH), 2012 WL 4092856, at *7 (N.D.N.Y. Sept. 17, 2012); *New York v. Shinnecock Indian Nation*, 560 F. Supp. 2d 186, 189 (E.D.N.Y. 2008). According to the Second Circuit, "'[u]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law.'" *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001) (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996)).

---

[18] With regard to legal mail, plaintiff seeks an order that he be provided with confirmation from the "mail room" when items delivered by him are placed in the mail. *See* Preliminary Injunction Motion at 2. Plaintiff's free-flow-of-mail claim, however, relates to incoming mail.

Fourth, plaintiff's fear that named and unnamed officials at Auburn C.F. might mistreat him in the future is purely speculative and, therefore, patently insufficient to make the showing required for the issuance of preliminary injunctive relief. *See Slacks v. Gray*, No. 9:07-CV-0501 (NAM/GJD), 2008 WL 2522075, at *1 (N.D.N.Y. June 25, 2008) (allegations of future injury without more do not establish a real threat of injury).

Fifth, plaintiff's submissions, which are construed to seek mandatory injunctive relief, fail to demonstrate, with evidence, a "clear and substantial" showing of a likelihood of success or that extreme or very serious damage will result if the motion is denied. Indeed, plaintiff offers no evidence to even meet the lesser standard required for a prohibitory injunction – a likelihood of success on the merits of his underlying claims, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Res., Inc.,* 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."); *Moore*, 409 F.3d at 510 (preliminary injunctive relief "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)); *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *8 (N.D.N.Y. Feb. 28, 2012) ("Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief."); *Fox v. Anthony*, No. 6:10-CV-839 (GTS/ATB), 2010 WL 3338549, at *2 (N.D.N.Y. July 15, 2010) ("Plaintiff has submitted no evidence, other than his own speculation that defendants . . . will retaliate against him when they find out that he filed this law suit. The same claim could be made by any inmate who names corrections officers as defendants in any action."), *report and recommendation*

*adopted by* 2010 WL 3338558 (N.D.N.Y. Aug. 23, 2010).

Based upon the foregoing, plaintiff's request for injunctive relief is denied.[19]

## V.     CONCLUSION

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**[20]; and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form (Dkt. No. 9), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915[21]; and it is further

**ORDERED** that the Clerk provide a copy of plaintiff's authorization form (Dkt. No. 9) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the Clerk file a copy of the Claims and Supporting Documents (Dkt. No. 3-4) immediately following the signature page of the complaint, and a copy of the Supplement to Complaint (Dkt. No. 11) immediately following the Claims and Supporting Documents insert; and it is further

**ORDERED** that the Clerk is directed to amend the docket to add Babin, Hearing

---

[19] Plaintiff is advised that concerns regarding his current conditions of confinement at Auburn C.F. should be addressed through administrative channels at the facility and DOCCS and, if necessary, by means of a properly filed action.

[20] Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[21] "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Officer, Auburn Correctional Facility, as a defendant; and it is further

ORDERED that the claims arising out of plaintiff's confinement at Wende Correctional

Facility are severed and transferred to the Western District of New York; and it is further

ORDERED that the Clerk shall advise the Clerk of the Western District of New York, in

writing, of the entry of this Order and provide that Clerk with a certified copy of this Order and

of the docket sheet for this action, together with all information necessary for the Western

District Clerk to electronically access the documents filed in this action; and it is further

ORDERED that the Clerk shall remove Wende Correctional Facility, Mr. Klepp, Mr.

Ferrell, Mr. Wade, J. Krygier, Mr. Kintzel, Mr. Sears, Mr. Shaneley, Mr. Brown, Mr. McQuire,

Mr. Byron, Mr. Martin, Mr. Thomas, Mr. Lyman, Mr. Mancini, Mr. Barlow, Mr. Kroel, Mr.

Bradley, Mr. Wade, Stewart Eckert, Benjamine A. Wilson, and Mr. Brown from the docket as

defendants in the Northern District action; and it is further

ORDERED that plaintiff's First Amendment free-flow-of-mail claim against defendants

Sheftic, Vanni, Shanke, and Carhardt and First Amendment retaliation claim against

defendant Vendetti **SURVIVE** sua sponte review and require a response; and it is further

ORDERED that plaintiff's claims for monetary damages against Auburn Correctional

Facility and the non-severed named defendants in their official capacity are **DISMISSED**

**with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred

by the Eleventh Amendment[22]; and it is further

ORDERED that all remaining claims are **DISMISSED without prejudice** pursuant to

---

[22] Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see Pucci v. Brown*, 423 F. App'x 77, 78 (2d Cir. 2011). Because these claims are barred by the Eleventh Amendment, leave to amend to would be futile.

28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted[23]; and it is further

ORDERED that Auburn Correctional Facility is **DISMISSED with prejudice** as a defendant; and it is further

ORDERED that the following individuals are **DISMISSED without prejudice** as defendants: Ms. Jones, Mr. Kirkwood, Mr. Wheeler, Ms. Vullwhite, Mr. Knapp, Mr. Norris, Mr. Vanderwerff, J. Remington, Mr. "D", Mr. Milnane, Mr. Nowak, Mr. Pickert, Mr. Penello, Mr. Corey, Mr. Grady, Anthony Smith, Ms. Simmons, Mr. Powell, Timothy McCarthy, Brenda J. Walsh, Michael C. Polcovich, Thomas J. Loughren, Leanne Callahan; and it is further

ORDERED that plaintiff's Preliminary Injunction Motion (Dkt. No. 3) is **DENIED without prejudice**; and it is further

ORDERED that the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon defendants Sheftic, Vanni, Shanke, Carhardt, and Vendetti. The Clerk shall forward a copy of the summons and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

ORDERED that a response to the complaint be filed by defendants Sheftic, Vanni, Shanke, Carhardt, and Vendetti, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

ORDERED that all pleadings, motions and other documents relating to this action

---

[23] Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

ORDERED that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

May 9, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge